## *EX PARTE* DAVEGA.

1. The law requires that the personal estate of an intestate shall be administered only by a duly appointed administrator.
2. Three years after condition broken of a chattel mortgage, and after the death of the mortgagor still in possession, the mortgagees appointed H. their agent to take possession of the chattels. H. took possession, collected accounts, sold the goods, and paid the mortgage debt, expenses of sale, fees to himself, and rent, and turned over the unsold goods to one who claimed them. *Held,* that even if the seizure and sale, after the death of the mortgagor, was authorized, still, for all goods seized, sold, and disbursed in excess of the mortgage debt, H. was liable to account to the probate judge as an executor *de son tort.*
3. But in such accounting, H. should be credited with the amount paid to the mortgage debt and to the expenses of the sale.

Before HUDSON, J., Chester, October, 1888.

The chattel mortgage referred to in the opinion covered "all my stock on hand, manufactured or otherwise, tools of every description connected with my business as harness and saddle maker, as well as stock, manufactured or otherwise, that may hereafter come into my possession, as connected with my business as harness and saddle maker, as well as notes and accounts which may be taken or made by me in said business." In case of default and sale, the proceeds were to be applied "to the discharge of the said debt, interest, and expenses, and pay any surplus to the said mortgagor or his assigns." Other matters are stated in the opinion.

*Mr. S. P. Hamilton*, for appellant.

*Mr. Geo. W. Gage*, contra.

October 16, 1889. The opinion of the court was delivered by

Mr. Justice McGowan. E. J. West, of Chester, died intestate in December, 1887. He had no lands, but some personal effects, principally a stock of goods as a merchant, which were in a store house rented from one Rudolph Brandt, to whom rent was due. It appeared that, otherwise, he was considerably involved. Wylie & Agurs had a mortgage of the stock of goods, books of account, &c., executed on January 4, 1884, to secure a note for $327.83, payable September 1st, then next (1884), and there were at least two judgments against the intestate, viz.: A. H. Davega for $420.87, December 8, 1884, and W. E. Shaw & Co., of the same date, for $117.45. At the time of the death of the intestate, his store was kept by a son-in-law, one Tanner, who yielded the stock of goods, books of account, &c., to J. K. Henry, Esq., who, as the attorney in fact of Wylie & Agurs, demanded them under the chattel mortgage aforesaid, which was past due before the death of the intestate.

It seems that J. K. Henry, acting under the supposed power given by the agency of Wylie & Agurs under the mortgage, advertised the stock of goods for sale on February 6th, 1888, and he also advertised for all persons indebted to E. J. West, deceased, to make payment to the firm [1] of which he was a member, and

---

[1] That is to say, the firm of Henry & Gage, attorneys at law.—REPORTER.

actually collected on book accounts $31.10. He realized from the sale of the goods $523.37, which, with the amount collected on accounts, made the sum of $554.47 ; which he paid out and retained as follows : To mortgage debt of Wylie & Agurs, $395.74 ; to R. Brandt, $110, for rent; $47.67, expenses, as follows : printing, $9.25 ; auctioneer, $4 ; J. F. Douglass, $5, &c. ; and retained for his own services $27.18. J. K. Henry had notice of the medical bills of Dr. Davega and Dr. Babcock, incurred in the "last illness" of the deceased, and refused to pay them. After the sale, Mr. Henry abandoned the remaining goods in the store unsold to Mr. Tanner, who stated that he was acting as agent of his wife, the daughter of E. J. West, who claimed (as it was alleged) to have been her father's principal in carrying on his business as a merchant.

All this occurred before there was any administration upon the estate of West, but Dr. A. H. Davega, being the largest creditor, took out letters of administration, and on the 6th of March, 1888, demanded of the said Henry the assets of the estate of E. J. West, which he had taken into his possession, and that demand being refused, he instituted this proceeding in the Court of Probate, to require the said J. K. Henry to make a discovery of all the goods and chattels, rights and credits, of the intestate estate of E. J. West, which had come into his possession, and to account for the same, &c. The defendant, Henry, made a return to the citation issued, justifying his action in taking possession of the goods and chattels, rights and credits, of E. J. West on two grounds : 1st, by virtue of the power given him by Wylie & Agurs under their mortgage. 2nd, because Mr. A. Tanner, the son-in-law of E. J. West, informed him that his wife, Mrs. Hettie Tanner, was the owner of the stock of goods, rights, and credits found in the store of E. J. West, her father, and that the latter had been doing business as her agent.

The judge of probate held that the defendant, Henry, had, under sections 1905 and 1906 of the General Statutes, made himself liable as an executor in his own wrong, and ordered him to pay into the hands of the petitioner, A. H. Davega, the rightful administrator, the sum of five hundred and fifty-four dollars and forty-seven cents ($554.47), to be administered according to law ;

that the balance of the stock of goods not sold, with the notes and books of account, be delivered to the said administrator, &c. From this decree of the probate judge, the defendant appealed to the Court of Common Pleas, and the appeal coming on to be heard by Judge Hudson, he held "that the title to the property being in Wylie & Agurs in the life-time of West, and the seizure having been made before administration granted, it is immaterial what the evidence in this case reveals as to the disposition of the goods and money, because the court cannot reach them by judgment for want of jurisdiction—certainly not in this form of proceeding," &c. And he set aside the judgment of the Court of Probate, and dismissed the proceedings with costs, &c.

The petitioner appealed from this decree upon the following grounds: "I. That E. J. West, the intestate, at the time of his death, being in possession of the stock of goods, the chattel mortgage of Wylie & Agurs was no authority to J. K. Henry to seize them after his death. II. That even if the seizure of the goods were originally lawful, the failure to make an inventory of the same, and the selling goods in excess of what was necessary to pay the mortgage debt, are acts of intermeddling, which constituted J. K. Henry an executor in his own wrong. III. That the payment of rent, $110, to R. Brandt, and the payment to himself of $27.18 as a fee out of the sale of the goods, were acts of intermeddling, which constituted J. K. Henry an executor in his own wrong. IV. That the payment of said sums of money, and the non-payment of the expenses of the last illness to Dr. S. M. Davega and Dr. Babcock, were acts of waste, as contemplated by the statute. V. Because the sworn return of J. K. Henry, when cited to account by the probate judge for the goods and accounts which came into his possession, being filed, his honor erred in not holding that his failure to account constituted a *devastavit*. VI. Because his honor did not hold that, after having seized and sold the goods of E. J. West under the chattel mortgage, and selling so much as he chose of the same, the abandonment of the remaining goods and books of account was waste, committed by J. K. Henry. VII. Because his honor found as matter of fact as follows: 'It also appears that Brandt demanded his past due rent before he would permit any goods to be removed,' when there

was not the slightest evidence of such fact. VIII. Because his honor, J. H. Hudson, overruled the decree of the probate judge, in which he erred."

We agree that this case furnishes a good illustration of the necessity for the rule, which requires that there shall be a responsible representative—an administrator under official obligation—of every intestate estate. Where a man dies without a will, the law directs how his property shall be disposed of, and appoints an officer to have it done, who represents all that have an interest in it; and all unauthorized intermeddling by any one not so appointed, is regarded with jealousy, if not repugnance.

The first question is, whether the acts of the defendant, after the death of West, the intestate, made him an executor of his own wrong, in regard to the estate of the said West. Section 1906 of the General Statutes provides as follows, viz.: "The judge of probate may cite before him such person or persons as, neither being appointed executor nor having obtained administration of the effects of such deceased person, shall, nevertheless, possess himself of the goods and chattels, rights and credits, of such person deceased. * * * The judge of probate shall require of him or them a discovery and account of all and singular the goods and chattels, rights and credits, of the deceased, and shall proceed to decree against him or them for the value of the estate and effects of the deceased, which he or they may have wasted, or which may have been lost by his or their interference, charging them, as executors in their own wrong are made liable at common law, to the extent of assets received," &c. There can be no doubt that the defendant, without being executor or administrator, did possess himself of the goods and chattels of the intestate, West, and that would seem to make the very case provided for by the law ; for there is no proof whatever that the property was owned by the wife of Tanner, or that he had any authority to turn it over to the defendant, Henry.

It is, however, urged that the goods and chattels seized, though in his possession at his death, were not "the effects of the deceased," in the sense of the act, but the absolute "property" of Wylie & Agurs, mortgagees of a chattel mortgage after condition broken, and that Mr. Henry, as their attorney in fact, had the

28 -31

right to seize and sell the property for the payment of the mortgage debt, after the death of the mortgagor; and the seizure being before administration, it was no trespass, and, therefore, it is immaterial what the evidence discloses "as to the disposition of the goods and money, for the court cannot reach them by judgment for want of jurisdiction." We have very grave doubts whether the mortgagees, after allowing the property to remain in possession of the mortgagor until his death, could, after his death and before administration, seize and sell the property, as they might have done during his life-time. On the death of the mortgagor, a new condition of things arose: the rights of the mortgagor, whatever they might be, were transmitted to his administrator, who is bound, under official responsibility, to administer the effects according to law; that is to say, to pay the debts in the order prescribed by the statute.

But passing this, and assuming, for the purposes of this case, that the mortgagees had the same right to seize and sell the property after as before the death of the mortgagor, that right surely did not extend beyond the payment and satisfaction of the mortgage debt, in which it originated. That was the extent of the agency, and we do not see upon what principle the defendant could do what he pleased with the balance remaining without danger of subjecting himself to the liabilities of an executor in his own wrong. It seems to be admitted that the defendant may be made liable, as an ordinary trustee, to account for the value of the property which went into his hands in excess of paying the mortgage debt; but it is insisted, that, having the legal right to seize and sell the property, he committed no trespass, and, therefore, no matter what he did with the excess, he has not made himself liable as executor *de son tort.* As we understand it, any tortious intermeddling, which causes loss to the estate, is sufficient for that purpose. One of the most common definitions of an executor *de son tort*, is "one who intermeddles with the goods of the deceased, or does any other act characteristic of the office of an executor." *Hubble* v. *Fogartie*, 3 Rich., 415; 1 *R. & L. Law Dict.*, title, Executor; *Leach* v. *House*, 1 Bail., 43. In the latter case, Chancellor David Johnson said: "There is no doubt that, with respect to the rightful executor (or administra-

tor), any intermeddling with the goods of the deceased is the foundation of an action of trespass; but strangers or creditors have not that fixed and legal interest in the property of the deceased that will enable them to maintain that action. If one possesses himself of the goods of a deceased person, and does those acts which properly belong to a rightful executor, creditors have a right to regard him as such; having taken that character on himself, he will not be permitted to disown it, &c."

This decision was made in 1828, and afterwards (1839) jurisdiction was expressly given to the then ordinary (now judge of probate), to require one, who had possessed himself of the effects of an intestate, under certain circumstances, to discover and account for the same as executor in his own wrong. Taking the view, as suggested, that the mortgagees, through their attorney, had the right, entirely *ex parte*, to seize and sell the property after the death and before administration, it seems to us that the excess over paying the mortgage debt was still the property of the estate in the sense of the act; so that in respect to it, one might make himself liable to account as executor of his own wrong in the Court of Probate, as well as on the equity side of the Court of Common Pleas. "All acts which assume any particular control over the property, without legal right shown, as, for instance, if a man pay the debts of the estate, or probate charges out of the money of the estate, it will be sufficient to make him executor *de son tort*." 7 *Am. & Eng. Encycl. Law*, p. 182, and notes.

. We have no idea that the defendant intended to do anything wrong, but there was want of proper care as to what property or money remained after the mortgage debt was satisfied. It seems that the defendant yielded the remnant of goods not sold to Tanner, who had no right to it; that he advertised for debtors of West, to pay to the firm of which he was a member; that he paid the rent note of $110 to Brandt, who, as landlord, had no priority over the mortgagees themselves, or over funeral or other expenses of the "last illness" (see *Ex parte Knobeloch*, 26 S. C., 331); that the estate was charged for commissions or a fee for services in selling the property covered by the mortgage; and in doing these acts, certainly "characteristic" of the office of a rightful

executor, we cannot resist the conclusion, that he thereby made himself liable as an executor of his own wrong.

In stating the account, however, the rule is well settled, that an executor *de son tort* is not liable for all the debts of the estate, but only to the extent of the value of the property taken or converted. And although he has no right to retain for his own debt, he may plead *plene administravit præter*, and show that he has paid away the amount of the assets chargeable to him in the due course of administration. Wylie & Agurs, merely as creditors, could not have retained for their own debt, but would have stood in their order with other creditors. They had, however, a mortgage, which was the oldest lien, and entitled them to payment first—certainly next after "the expenses of the last illness"; and the defendant, as their agent, should be credited with the mortgage debt and all proper expenses of the sale, and he should account for the remainder of the property which he took into his possession, to be administered according to law.

It is the judgment of this court, that the judgment of the Circuit Court, dismissing the proceedings, be reversed, and the case be remanded to the Probate Court for account and settlement, according to the principles herein announced.